**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Walter E. Sample, Sherry L. Earle Revocable Living Trust, San Simon Gin Incorporated, and Lesco Enterprises Incorporated, | No. CV-16-00624-TUC-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Centurylink Communications LLC, Level 3 Communications LLC, Sprint Communications Company LP, and WilTel Communications LLC, | |
| Defendants. | |

Before the Court is the parties' Renewed Joint Motion for Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Approval of Form and Manner of Notice. (Doc. 50.) Both parties have submitted memoranda of law in support of the Motion (Docs. 51, 52), as well as supplemental authority (Doc. 53).

## I.    PROCEDURAL BACKGROUND

CenturyLink Communications, LLC, Level 3 Communications LLC, Sprint Communications Company L.P., and WilTel Communications, LLC, (collectively "the Cable Companies") are telecommunications companies that have laid fiber-optic cable underneath railroad rights of way throughout Arizona. (Doc. 30 at 11-12.) Those rights of way, which cross privately owned land, were granted to railroad companies by the United States under the General Right of Way Act of 1875 (the "1875 Act"). (*Id.* at 17.)

The putative plaintiff class—which, for ease, is referred to as the class—consists of landowners who own property adjacent to or beneath about 335 miles of the rights of way in question. (*Id.*) The class is represented by Walter E. Sample, the Sherry L. Earle Revocable Living Trust, San Simon Gin, Inc., and Lesco Enterprises, Inc. (collectively "Plaintiffs"). Plaintiffs allege the Cable Companies made deals with various railroad companies to lay fiber-optic cable on the rights of way even though the 1875 Act grants rights of way only for "railroad purposes." (Doc. 1 at 2-3.)

Landowners filed class actions against telecommunication companies over the legality of similar arrangements in a number of states. (Doc. 30 at 15.) Despite attempts to litigate and settle all the claims in one action, two federal courts concluded those claims could not be resolved on a nationwide class basis but needed to be litigated state by state. (*Id.*) As a result, landowners brought separate actions in each state. (*Id.*)

In 2010, the parties in this case brought one such action in Arizona in this Court. (*See* Doc. 1, Case No. CV 10-08106-PCT-NVW.) One year later they jointly filed a motion for class certification and preliminary approval of a settlement agreement. (Doc. 57, Case No. CV 10-08106-PCT-NVW.) In a hearing on that motion, the Court raised several concerns about the proposed settlement and requested additional briefing on a number of issues, including "The scope of the Court's authority under Fed. R. Civ. P. 70 to enforce a judgment against an absentee class member plaintiff"; "Authority granting the Court power to convey an easement from class members, as opposed to simply extinguishing an existing claim, through a class action settlement"; and "The scope of the Court's authority under Fed. R. Civ. P. 23 to vest the claims administrator with final adjudicative responsibility over class members' claims." *Sample v. Qwest Commc'ns Co., L.L.C.*, No. CV 10-08106-PCT-NVW, 2012 WL 1880611, at *1 (D. Ariz. May 22, 2012). After the parties' supplemental briefing failed to adequately address these concerns, the Court set a hearing to give the parties "opportunity to present argument on why the granting of easement rights under [the proposed settlement agreement] should be

given preliminary approval." *Id.*, at *2. On January 17, 2012, the parties agreed to dismiss the action without prejudice and entered into a tolling agreement to give them time to consider their options. *Id.* The Court granted the dismissal as required by Rule 41(a)(1)(A)(ii). (Doc. 90, Case No. CV 10-08106-PCT-NVW.)

The parties proceeded to obtain class settlements in other states for more than four years. On September 22, 2016, the parties, seeking certification and approval of the class settlement they had withdrawn in 2012, filed the present action in the Tucson Division of this Court. (Doc. 1.) It was assigned to another judge in the Tucson Division but later transferred to the undersigned judge on February 9, 2017, as required by Local Rule LRCiv 3.7(a)(2). (Doc. 37.)

A Joint Motion for Class Certification was pending at the time of the transfer. (Doc. 30.) The motion was denied with leave to refile. (Doc. 45.) The parties revised their settlement agreement and now present it once again for approval. (Doc. 50.)

## II. NATURE OF THE CASE AND PROPOSED SETTLEMENT

### A. Nature of the Case

The Plaintiff landowners assert claims for trespass, unjust enrichment, and slander of title. (Doc. 1 at 10-12.) The gravamen of their Complaint is that the railroads' rights of way do not include the right to lay fiber optic cables and therefore the railroads could not convey such a right to the Cable Companies. Yet the railroads did convey that right, and the Cable Companies laid their cables under the rights of way. As a result, the Cable Companies "have committed present, permanent, and continuing trespasses" on class members' lands. (*Id.* at 3.) The question presented is thus whether the Cable Companies acquired a right to install and maintain their fiber-optic cables on the railroad rights of way upon grant of the railroads and without the adjacent or underlying property owners' approval.

The answer depends on how one interprets the 1875 Act. Plaintiffs contend that the rights of way granted to the railroad companies in the 1875 Act are limited to "railroad purposes." (Doc. 1 at 3.) They say burying and maintaining fiber-optic cable,

cable not used in the railroad operation itself, exceeds that scope. (*Id*.) The Cable Companies should have bought the right to install their cable systems from the adjacent landowners, not the railroad companies. (*Id*.) The parties state that whether the 1875 Act "conveyed a fee-interest in land or merely an easement, and the scope of any such easements, have been contentious issues in right-of-way litigation and in settlement negotiations."[1] (Doc. 30 at 17.)

The term "railroad purpose" does not appear in the 1875 Act, *see* 18 Stat. 482, but it is inherent in the statutory language granting a "right of way" to "any railroad." The phrase comes from the Supreme Court's description "of the nature of the rights acquired" under various statutes. *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1131 (9th Cir. 2018) (citing *United States v. Union Pac. R.R. Co.*, 353 U.S. 112 (1957)). In *Barahona*, the Court of Appeals concluded that railroad right-of-way statutes predating the 1875 Act did not require a "railroad purpose." *Id.* at 1133. It further explained that the 1875 Act conveyed an interest different from the interest conveyed by previous statutes. *Id.* The defendant in *Barahona* conceded "that the 1875 Act conferred only an easement in the right of way, albeit a broad easement 'for railroad purposes.'" *Id.* Railroad purposes have been held to be broad, from power and communication lines to fuel storage and other warehouses (*id.* at 1134 (collecting cases)), at least when of more than "minimal or illusory benefit to railroad operations." *Id.* at 1135. "[A] railroad may license third parties to do what it could do itself, even if the third party benefits in addition to the railroad." *Id.* (citing *Grand Trunk R.R. Co. v. Richardson*, 91 U.S. 454, 468 (1875)). These examples fall within what is known as the incidental-use doctrine. *Id.* at 1134-35.

Ultimately, then, the issue in this case is whether the railroad companies' rights of way include fiber-optic cable use within this incidental-use doctrine. That devolves down to whether the railroads do use the fiber-optic cable system in their railroad

---

[1] It is settled that the railroad right of way under the 1875 Act is not a fee interest. *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1133 (9th Cir. 2018).

operations in more than a "minimal or illusory" way, even though the Cable Companies use the system for the public in general.

## B.    The Proposed Settlement

The parties have reached a compromise.  Under the terms of the Revised Arizona Class Settlement Agreement ("Proposed Settlement"), class members who own land adjacent to the Cable Companies' cable system will be paid $1.16 per linear foot of affected land.  (Doc. 50-1 at 6.)

In exchange, class members are giving up three distinct forms of legal right.  First, they are giving up damages for past trespass.  Second, they are permanently giving up their rights against continuation of that same trespass.  The Cable Companies will get the right to continue the existing trespass—to keep and maintain their cable uses intact as they are now.  Third, the Cable Companies will acquire the right to expand their intrusion beyond what it has been and now is.

Indeed, the right the Cable Companies seek to acquire is expansive.[2]  To get their compensation, participating class members must execute and tender to a Claims Administrator a release of claims form.  (*Id.* at 18.)  The release of claims appropriately applies to the Cable Companies and to all possible predecessors and successors in interest.  (Doc. 50-1, Ex. H at 68.)  The release defines "Settlement Claims" as

> all claims for past, present, and future damages, past, present, and future equitable relief, and **any other form of relief now or in the future, arising out of or relating to any Settling Defendant's ownership, installation, occupation, maintenance, or use of its Telecommunications Cable System** or any component of a Telecommunications Cable System that has been installed on or in an Arizona Settlement Corridor, **or any other claims addressed in or arising out of the subject matter of the Settlement Agreement or the Class Complaint or that could have been alleged in the Class Complaint**, including without

---

[2] In response to the Court's concerns, the parties have dropped from the Proposed Settlement any mention of an "easement deed."  (Doc. 51 at 8.)  In lieu of an easement, the Cable Companies seek an unnamed property right granted to them by contract and to be recorded and run with the land.  Mere avoidance of the label "easement" does not change anything.

limitation claims for permanent trespass, continuing trespass, unlawful entry, slander of title, quiet title, breach of covenant, unjust enrichment, criminal mischief, criminal trespass, inverse condemnation, conversion, conspiracy, injunctive relief, declaratory judgment, compensatory, consequential and punitive damages, and any and all such claims, including assigned claims, offsets, and counterclaims, whether known or unknown, whether or not concealed or hidden, asserted or unasserted, regardless of the legal theory, that are or may be asserted now or in the future by any or all Class Members, or their successors, heirs, or assigns, against a Settling Defendant and/or any Released Party, provided, however, that **Settlement Claims do not include (1) claims against any Released Party arising out of the ownership, occupation, maintenance, or use of any telecommunications cable system or any component of a telecommunications cable system, other than a Telecommunications Cable System**, (2) claims for bodily injury or physical harm or damage to property located or situated outside the lateral boundaries of the Right of Way, (3) claims by Settling Defendants against any Right-of-Way Provider, insurer, or other third party for contribution, indemnification, or insurance benefits, which claims Settling Defendants specifically reserve, or (4) claims arising out of alleged violations of the Settlement Agreement.

(*Id.* at 69 (emphases added).)

The "Telecommunications Cable System" is

a telecommunications cable system (including **underground and surface cables**, conduits, wires, fibers, pipes, ducts, waveguides, surface testing terminals, manholes, markers, regeneration huts, hand holes, splice vaults, poles, optical or electronic equipment, signs, and related facilities necessary and appropriate for installation, use, repair, or maintenance of such components), and any components thereof that are (1) located within a Right of Way and (2) **have been, are now, or are hereafter constructed, installed, owned, or operated by any Settling Defendant**, by any parent, subsidiary, or affiliated entity of any Settling Defendant, or by any person or entity to whom a Settling Defendant has heretofore sold, granted, leased, or otherwise transferred, or hereafter sells, grants, leases or otherwise transfers, the right to operate any portion of a telecommunications cable system.

(*Id.* at 70 (emphases added).)

In sum, class members must release the Cable Companies from virtually all claims related to the Telecommunications Cable System. (*Id.* at 69.) The sweeping language includes anything "that could have been alleged in the Class Complaint" and claims that could be "asserted now or in the future." (*Id.*) The Settlement Agreement provides for

few exceptions, one of which is claims "arising out of the ownership occupation, maintenance, or use of any telecommunications cable system . . . other than a Telecommunications Cable System." (*Id*.) It is hard to imagine what such other telecommunications cable systems might be, as the Telecommunications Cable System here is the only one that is the subject of this action. The defined term Telecommunications Cable System includes all existing telecommunications cable systems and their components located within a railroad right of way. (*Id.* at 70.) The term also encompasses the right of the Cable Companies "hereafter" to construct or install cable system components, which include, among other things, surface testing terminals, poles, signs, and "necessary and appropriate" related facilities. (*Id.* at 70.) There thus appears to be no meaningful limit to the expansion of the Telecommunications Cable System as defined. The Settlement Agreement and release of claims expressly extend beyond the existing trespass. They authorize expanded trespass and use of every sort for the Telecommunications Cable System. Class members who do not opt out and do not submit a claim form and signed release forfeit their right to compensation for the past and future trespass of the same extent and character as now exists, as that is how Rule 23(b)(3) works. But they also lose their property rights against future expansion of the trespass.

Neither the Proposed Settlement nor the release of claims limits the scope of the Cable Companies' cable use of the landowners' property. (Doc. 50-1 at 11; Doc. 50-1, Ex. H.) By contrast, the parties' proposed final order of settlement prohibits the Cable Companies from erecting "microwave towers, cell towers, or other components of a primarily aboveground statewide telecommunications cable system." (Doc. 50-1, Ex. E at 62.) Similar limitations are found in the parallel New Mexico case of *Fager v. Centurylink Communications, LLC*, Civ. No. 14-cv-00870 JCH/KK, 2015 WL 13298517, at *2 (D.N.M. June 25, 2015): "The scope of the easements does not permit the installation of large structures, cell towers, or other components of a primarily above-

ground telecommunications system." The parties do not explain why the language differs. Perhaps it is an oversight.

The parties' proposed notice to class members says any court order granting final approval will be recorded in all current property owners' chains of title, even if those owners do nothing. (Doc. 50-1, Ex. C at 49.) Class members have 45 days from the date preliminary notice is mailed to object or opt out. (Doc. 50-1 at 8.) If "in the reasonable discretion" of any Cable Company, "an excessive number" of class members opt out, each Cable Company has a right to withdraw prior to the final Fairness Hearing. (*Id.* at 21.)

In short, under the current Settlement Agreement, class members who do not opt out will be forced to give up property greater than necessary to entitle the Cable Companies to continue their past and current level of trespass. The Cable Companies and their successors and assigns could build new surface and subsurface structures on class members' property. And if enough class members do not like this arrangement, any Cable Company may withdraw from the settlement.

The other terms of the Settlement Agreement are fairly evenhanded. A class member must prove a claim for benefits by providing the Claims Administrator, a third-party agency, "with a copy of a deed or certificate of title." (*Id.* at 7, 12.) The member must submit a claim form and a release of claims, and the Claims Administrator will determine whether the member is entitled to compensation. (*Id.* at 17-18, 23-24.) The compensation will be prorated according to the amount of time the class member owned a parcel from the date the cable was installed to the end of the compensation period. (*Id.* at 13-14.) The Claims Administrator must process a claim within 120 days of its submission. (*Id.* at 19.) The Cable Companies can contest a claim, and the Claims Administrator has ultimate authority, without review of any kind, to determine which claims are valid.[3] (*Id.* at 23-25.)

_____

[3] These "unreviewability" provisions have consistently been enforced so long as the claims administrator is neutral and independent. 4 Newberg on Class Actions § 12:22

The class representatives may apply for an incentive award of $1,300, except Lesco Enterprises, Inc., which qualifies for $3,200. (*Id.* at 6.) Class counsel may receive an award of attorneys' fees not to exceed $903,000, an award to which the Cable Companies will not object. (*Id.* at 8, 14-15.)

Each Cable Company has an ongoing obligation to keep the settlement account funded. (*Id.* at 15-16.) The Cable Companies must also pay all administrative costs and claims-processing expenses. (*Id.* at 16.) The parties estimate those costs will be approximately $863,000. (Doc. 52 at 7.)

Having crafted these terms, the parties ask the Court to: (1) certify the plaintiff class, (2) grant preliminary approval of the Settlement Agreement, and (3) approve the form and manner by which they will give notice to class members. The Court addresses each request below.

Whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, what other methods are available, whether a money damage class is even a lawful method to acquire the expanded property rights the Cable Companies seek, and whether discretion leads the Court to preliminarily approve the class and the settlement are bound up together. These things are addressed together in the discussion of class certification and preliminary approval of the Settlement Agreement.

## III. CLASS CERTIFICATION

### A. Legal Standard

"When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (internal quotation marks omitted).

(William B. Rubenstein, ed., 5th ed. 2018) (collecting cases) ("[T]he settlement agreement may, though it need not, set forth a procedure for appealing the administrator's determinations.").

The Court's authority to certify a class action is found in Federal Rule of Civil Procedure 23. Class plaintiffs must first establish the four requirements stated in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact are common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation). A plaintiff seeking class certification must also meet one of the requirements found in Rule 23(b). Here, the parties seek certification under Rule 23(b)(3), which requires both that common questions predominate over individual ones (predominance) and that a class action is superior to all other methods of adjudicating the parties' dispute (superiority).

**B.    Analysis**

### 1.    Numerosity

The parties have identified more than 5,000 eligible class members. (Doc. 30 at 27.) That is large enough to meet the numerosity requirement. *See Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 213 (E.D. Cal. 2015) (citing *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010)) (numerosity is usually "satisfied when a class includes at least forty members").

### 2.    Commonality

"All questions of fact and law need not be common to satisfy" the commonality requirement. *Staton*, 327 F.3d at 953 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). But class members' claims "must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The key question is whether the railroads' grants of fiber-optic easements lawfully prevail over the adjacent landowners' property rights. That turns on what the railroads

could lawfully sell. The Court could resolve that issue "in one stroke." To the extent there are statute-of-limitations defenses, they would cover all or most claims in the same way. There is commonality among the class members.

### 3. **Typicality**

Typicality requires that the class representatives have "claims or defenses . . . typical of the claims or defenses of the class." *Staton*, 327 F.3d at 957. By all indications the class representatives here share equally in the common complaint that the Cable Companies unlawfully laid fiber-optic cable along the right of way crossing their property. Typicality is satisfied.

### 4. **Adequacy of Representation**

The test for adequacy of representation turns on two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Plaintiffs' and their counsels' incentives appear to be aligned with the proposed class. Indeed, after the Court expressed skepticism regarding their proposed two-tier damages scheme, the parties renegotiated the Proposed Settlement and agreed to give all class members the higher amount per linear foot. (Doc. 51 at 9-10.) This extra-contractual evidence of good-faith renegotiation is relevant in this case. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997) (noting that settlement terms may inform whether absentees' interests are adequately represented). The record indicates that the representative Plaintiffs and their counsel have, on the whole, prosecuted this case vigorously to obtain better relief for the entire class.

### 5. **Predominance**

"Rule 23(b)(3)'s predominance and superiority requirements were added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Wells Fargo Home*

*Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (quoting *Amchem*, 521 U.S. at 615) (internal quotation marks omitted).

Predominance requires that questions common to the class predominate over individualized inquiries. Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted) (alteration in original).

The crux of this case is whether railroads' rights of way empowered them to convey fiber-optic cable easements to the Cable Companies, a question common to all class members that is susceptible to generalized, class-wide proof, as all the rights of way were obtained under the 1875 Act. There is, however, the question of individual damages. The individuation of damages is avoided by the settlement term for the same compensation rate for all class members. That approach to damages, applied to the existing alleged trespass, is reasonable.

The question of the Cable Companies' alleged trespass is necessary to and predominates over individual inquiries.

### 6. **Superiority**

Rule 23(b)(3) provides four nonexclusive factors to consider in the usual case when deciding whether a class action is superior to other methods of adjudication: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions," "(B) the extent and nature of any litigation concerning the controversy already begun by or against class members," "(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "(D) the likely difficulties in managing a class action."

A class action would efficiently adjudicate class members' existing trespass claims against the Cable Companies. The interests of most class members are limited given the

size of most claims. There is no other related pending litigation. Concentrating the decision on the central legal issue in a single forum is an efficient way to adjudicate this dispute. Management concerns are attenuated for settlement-only classes. *Amchem Prods.*, 521 U.S. at 620. Even without a settlement, management concerns are not an impediment to adjudication of the predominant legal questions in this case. Finally, the right to opt out when the terms of the settlement are already known and, as this Court will require, already approved, largely accommodates the interests of class members in litigating their own claims.

Viewed as it is pleaded—not as it is settled—this is a trespass damage class action. Such a class action is the only way absentee class members are likely to collect for the trespass on their property. As such, it is superior to adjudicate such claims as a class. An individual member's harm is unlikely to be worth the expense of a separate lawsuit. Indeed, in previous actions, the large majority of class members did not even submit claims for the money that was theirs for the asking.[4]

However, when the case is viewed as it is settled rather than as it is pleaded, it is much more than just a trespass damage class action. The proposed settlement does not just resolve the class members' trespass damage claims. It also achieves the Cable Companies' objective of acquiring property rights from the class that exceed the continuation of the existing trespass. Whether this class action is a superior or even legal means to achieve that calls for further analysis, including consideration of other procedures available. Those considerations are as relevant to whether to preliminarily approve the Settlement Agreement as they are to whether to certify the class. The parties

---

[4] The data provided by the parties indicate that on average only 12% of eligible claimants came forward in nine states. The percentage of members who made claims in each state is as follows: Montana: 10%, Wyoming: 16%, Nevada: 15%, Utah: 12%, North Dakota: 15%, Idaho: 12%, Colorado: 13%, Oregon: 8%, Arkansas: 9%. (*See* Doc. 42-1 at 1.) The percentage of available benefits actually paid in each state's settlement is as follows: Montana: 15%, Wyoming: 16%, Nevada: 17%, Utah: 18%, North Dakota: 32%, Idaho: 29%, Colorado: 15%, Oregon: 10%, Arkansas: 5%. (*See id.*)

appear to treat those as one and the same, so the discussion of the superiority requirement will be integrated into the discussion of preliminary class certification and settlement approval.

In sum, the Rule 23(a) and Rule 23(b)(3) requirements for class certification are presumptively satisfied for a money damage trespass class, the settlement of which includes perpetuation of the existing trespass. If that were all, the Court would set the Motion for hearing, objections, and ruling on class certification. But that is not all. This Motion for class certification comes with a proposed settlement.

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

### A. Legal Standard

Where a proposed class-action settlement would be binding on class members, "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Only after being granted preliminary approval can the parties proceed to notify potential class members. Class members can formally object to class certification. The parties propose that class members be required to exercise their right to opt out of the class before the hearing on class certification and approval of the settlement. The Court need not do so, Rule 23(e)(4), and it is not inclined to do so. Doing nothing has the effect of staying in the class and being bound by the class settlement if it is approved. The parties seek class certification and final approval of the settlement at the hearing to be noticed.

There is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Generally, parties represented by counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). But certain circumstances may indicate that the settlement reached was not truly fair, such as negotiations that are biased or tainted by conflicts of interest. *Id.* A court "may not approve a proposed settlement if it is the product of fraud or overreaching by, or

- 14 -

collusion among, the negotiating parties." *Id.* (internal quotation marks omitted). Beyond those disqualifications, the "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Of course, the gravitational pull toward approving class settlements assumes genuine adversity and vigorous pursuit of the interests of the class members. Before giving final approval, courts must consider at least eight factors, which are laid out in detail below. *Hanlon*, 150 F.3d at 1026. Approval also assumes the substance of the settlement is congruent with and legal for the type of class for which certification is sought. If it is not, the class or the settlement must fail.

**B.    A Class and a Settlement Would Be Preliminarily Approved for Compensation for Past and Permanent Trespass of the Present Extent**

**1.**    Under Rule 23(e), the Court must independently examine whether the proposed settlement truly protects the interests of all parties involved. *Hanlon* laid out eight factors by which to evaluate the fairness, adequacy, and reasonableness of a proposed settlement:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

150 F.3d at 1026.

The Settlement gives the Cable Companies an unlabeled property right *at least* coextensive with the existing trespass on the landowners' property. The right's purpose is to perpetuate the Cable Companies' right to maintain that trespass as against any future challenge. (Of course, the Settlement also gives the Cable Companies a broader right to increased future trespass. That will be discussed later.) Approval of that transfer of a property right with future effects raises the serious question of whether a Rule 23(b)(3)

money damage class settlement can achieve such a transfer as against unconsenting absentee class members.

In the usual money damage class action, the nonparticipating, absentee class members forfeit their share of the settlement moneys. But the effect of this type of settlement, even only as to the perpetuation of the existing trespass, is not just to walk away from money owed under the class settlement. It also adjudicates a transfer of a property right of the class member merely because the class member did nothing.

Nothing in the text of Rule 23 authorizes that result. Indeed, Rule 23 provides a mechanism for adjudicating affirmative claims against defendant class members. 5 Moore's Federal Practice § 23.44[4] (Daniel R. Coquillette et al. eds., 3d ed. 2015). But the Cable Companies have not counterclaimed against a class of property owners for affirmative relief or met any of the requirements for certification of a defendant class.

**2.** It is a close question, but this Court is persuaded by the only appellate authority on point that settlement of a money damage trespass class action can as a general matter include transfer of a property right, however labeled, coextensive with the present trespass to perpetuate that settled, continuing trespass. In *Fager v. Centurylink Communications, LLC*, 854 F.3d 1167 (10th Cir. 2016), the Tenth Circuit affirmed as not illegal and not an abuse of discretion a similar settlement in a case parallel to this one. The court overruled objections that the grant of easement as part of settlement of the money damage trespass class action was an improper counterclaim against the class and an improper condemnation of the class members' property rights. The court held:

> To put the matter in perspective, the structure of the settlement . . . is precisely what one would expect as resolution of the claims in the complaint—without any counterclaim. . . . If Defendants are going to pay anything to the class members, they would insist on a release, a release that would protect them against repeated litigation over the same subject matter. And the best protection against litigation by future owners of the land is an easement that can be recorded, making it readily enforceable.

*Id.* at 1172-73. In short, the Tenth Circuit found the practicalities of how trespass claims are settled by individual litigants trump the procedures of the law for counterclaims and

- 16 -

condemnation even as to nonparticipating absentee class members. Whether Rule 23(b)(3) implies this is uncertain, but on authority of *Fager*, this Court would approve a class and a settlement that went that far and no further.

The only further discussion in support of this conclusion is incomplete.[5] The *Fager* court also said:

> Indeed, even if the class members went to trial and prevailed on all their claims, one would expect a similar resolution in the end. Although the class complaint demands removal of the fiber-optic cable, it would be remarkable if the class members had any interest in the removal, given that the rights-of-way are generally inaccessible to them in any event. Rather than seeking removal of the cable, they would surely prefer compensation for future intrusion (that is, compensation for an easement).

*Id.* at 1173. To be sure, fair market value is one measure of past damages for trespassory use. *Mikol v. Vlahopoulos*, 86 Ariz. 93, 95, 340 P.2d 1000, 1001-02 (1959). But unless some exception applies, ejectment is a usual remedy against a present trespasser to land. Ejectment imposes the cost of alternative, non-trespassing construction on the trespasser. The cost of replacement has no relation to fair market value of the trespass or of the property interest that would be transferred. Any lawyer who has sued and settled for ejectment of trespassing construction against a trespasser without the power of eminent domain knows that.

So it would not be "remarkable if the class members had any interest in removal." Adjudication or threat of adjudication of removal would force the Cable Companies to offer compensation, pre-judgment or post-judgment, based on their cost of removal and replacement, which could be vastly greater than the fair market value of the past trespass and of the property interest to be transferred.

The Cable Companies have the power of eminent domain in Arizona.[6] But the laws lay out exact procedures for invoking that power, and class proceedings are not one

---

[5] The rest of the opinion is about challenges to adequacy of the class notice and fairness of the settlement.

of them, either as to a defendant class or as to settlement with a plaintiff trespass money damage class. The critical difference is that the condemning authority must settle with or sue each landowner. The Cable Companies do not and cannot invoke the power of eminent domain in the adjudication or settlement of this class action.

Notwithstanding these problems, this Court is persuaded on authority of *Fager* that settlement of a money damage trespass class action may include perpetuation of the settled trespass but no transfer of greater property interest.

**3.** The amount offered, with respect to the existing trespass, is reasonable for the current level of trespass. The parties originally agreed on a two-tier damages system, where some class members would receive $0.75 per linear foot and some would receive $1.16 per linear foot. (Doc. 30 at 34.) In response to the Court's concerns, the parties renegotiated and now have agreed to pay all class members $1.16 per linear foot. The settlement amount is entitled to deference. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). The attorneys' fees the Settlement Agreement provides to Plaintiffs' counsel are reasonable, at least on their face. A more robust analysis of the fees requested will be appropriate at the final approval stage.

**4.** The extent-of-discovery and experience-of-counsel factors also weigh in the Settlement Agreement's favor. The parties point out that these right-of-way suits span back to the 1990s. (Doc. 30 at 33.) Over the nationwide course of these suits, "Plaintiffs' Counsel [ ] obtained more than 3.5 million pages of documents . . . and took or defended more than three dozen depositions." (*Id.*) The parties weaken their argument by failing to explain exactly how much time or effort was spent on work and discovery in *this* case, but the cumulative efforts are certainly relevant. (*See id.* at 36.) The parties also state that they had "multiple mediation sessions [that] helped bridge the gaps and reach the Settlement that is now before the Court." (*Id.* at 33.) Further, as

---

[6] *See* A.R.S. § 12-1115(C); A.R.S. § 12-1111.9. *See also Tucson Elec. Power Co. v. Adams*, 134 Ariz. 396, 397-98, 656 P.2d 1257, 1258-59 (Ct. App. 1982).

noted, the fact that the parties were responsive to the Court's various concerns shows they took the negotiations seriously.

Weighing all of the *Hanlon* factors, the Court preliminarily would find most of the Settlement Agreement is fair, adequate, and reasonable if it were limited to perpetuating the current trespass and not expanding it. For that relief, a class action would be the superior method of litigating the claim. That settlement would end this damage action, compensate participating class members, and leave the Cable Companies to continue doing what they are doing now. That is the usual result of successful adjudicated or settled Rule 23(b)(3) class actions.

The Court would also preliminarily approve class certification, subject to notice, objections, and final determination. But the parties do not seek preliminary class approval except as part of preliminary approval of the Settlement Agreement.

### C. As a Matter of Law and Discretion, the Court Rejects Forced Validation of the Expanded Trespass Sought in this Settlement

Under the Settlement Agreement, the Cable Companies will obtain the expanded right to almost unrestricted cable use of parts of class members' land without compensating them for it if those class members fail to respond. All members will end up conveying or having conveyed to the Cable Companies a property right, not just to maintain the existing trespass, but also to expand it greatly. The Court sees both a legal impediment and a failure of discretion in approving such a settlement.

Legally, the Court finds no authority for forcing absent class members to convey their property beyond what is commensurate with making permanent the right of the trespasser to continue his trespass as it is when settled. The justification of *Fager*, which this Court accepts but with hesitation, falls far short of that. That aspect of the Settlement Agreement exceeds legal authority for a Rule 23(b)(3) class settlement.

Even if the rule of *Fager* were extended to allow any forced conveyance from unconsenting class members concerning the trespasser's future expansion of his trespass, in its discretion this Court would not approve such a settlement term. The reasons for

- 19 -

that exercise of discretion bring back into play the preliminary requirement of superiority of the class proceeding over other means of litigation.

There is another, superior method of obtaining an easement beyond what is necessary to validate the existing level of trespass: condemnation by the Cable Companies. That happens all the time when utilities and public service corporations seek rights of way. Almost all landowners would accept a mid-range offer of compensation in lieu of defending the condemnation action. The result would be the same as under the current Settlement Agreement except that the Cable Companies would have to pay every landowner, which is the way it is supposed to happen under condemnation procedure.

Therefore, as a matter of law, this aspect of the Settlement Agreement does not present a superior method of adjudication appropriate for a Rule 23(b)(3) class certification. In addition, the Court exercises its discretion to reject it. *Class Plaintiffs*, 955 F.2d at 1276.

For these reasons, a Settlement granting the Cable Companies the right to expand their trespass would be beyond the scope of Rule 23(b)(3) even for a valid and certifiable class. For the purpose of acquiring such expanded easement rights, a class action is not superior to a traditional condemnation action. And in any event, the Court exercises its discretion not to preliminarily approve this aspect of the proposed Settlement.

## V. NOTICE

### A. Legal Standard

Federal Rule of Civil Procedure 23(c)(2)(B) governs the requirements of notice in Rule 23(b)(3) class actions. The Rule provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Further, "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." In addition, due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

**B.   Analysis**

Plaintiffs submit the Declaration of Shannon R. Wheatman, a specialist in class action notification programs whose firm designed the notice program in this case. (Doc. 52-1, Ex. A at 2.) The notice program has four parts: (1) direct notice by first-class mail to known class members, (2) paid published notice in state newspapers (including Spanish-language newspapers) and online, (3) a national media campaign, and (4) a dedicated website. (*Id.* at 6.) Class members will be identified from current tax rolls and real property records, as well as records from analyses conducted in 2003, 2007, and 2011. (*Id.*) A toll-free number for an information line will be provided in all forms of notice. (*Id.*) Wheatman estimates that direct mail alone will reach 78.9% of the class and that the entire program will reach 85.2% of the class. (*Id.* at 7, 10.)

The mailed notice will come in an envelope with conspicuous lettering that says "Court-Ordered Legal Notice" and, in even larger letters, "Important Notice About Your Property." (Doc. 52-1, Ex. D at 47.) The back of the envelope states, "If You Own or Owned Land Under or Next to Railroad Rights of Way Where Fiber-Optic Cable was Installed, You Could Receive Money from a Class Action Settlement." (*Id.* at 46.) The title page of the notice itself contains an easily readable table that explains how to submit a claim form, object, opt out, and attend the Fairness Hearing. (Doc. 50-1, Ex. C at 41.) The full notice is a little over six pages in the form of easily understandable questions and answers about the Settlement Agreement and the litigation. (*Id.* at 42-49.) The notice informs class members that if they do nothing they will "get no payment" and will give up their "rights to ever sue the Defendants about the legal claims in this case." (*Id.* at 48-49.) It further notes that "any Court order granting final approval of the Settlement will

be recorded in the chain-of-title for your property if you are a current landowner." (*Id.* at 49.) At the bottom of every page are the phone number and website for questions.

The proposed notice program would meet the standards of Rule 23(c) and federal due process for a settlement that did not further transfer rights to the Cable Companies to an easement to expand their existing trespass. It describes the nature of the action; it defines the class and states the issues and defenses; it tells class members how to appear at the hearing and says they may hire their own lawyer; and it explains the exclusion process, the deadline for exclusion, and the otherwise binding effect of the judgment. Further, the notice program is designed to reach as many people as practicable, and the notice itself clearly and concisely explains how to object. The notice program is sufficient, subject to changes that would have to be made in the Settlement Agreement.

IT IS THEREFORE ORDERED that the Renewed Joint Motion for Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Approval of Form and Manner of Notice (Doc. 50) is denied without prejudice. The Court specifically does not preliminarily approve:

> 1. The transfer of an easement, however styled, from class members that exceeds a property interest necessary to validate the current level of trespass and
>
> 2. The term that class members must opt out of the class before the final hearing on and the approval of class certification and the Settlement Agreement.

The parties may re-urge a revised motion.

IT IS FURTHER ORDERED setting a status conference on September 27, 2018, at 11:00 a.m. to discuss how the parties wish to proceed. Out-of-state counsel may appear telephonically by notifying the Court no later than September 24, 2018. Counsel appearing telephonically must join a conference call and then place a call as a group, five

minutes prior to the status conference, to (602) 322-7640. All counsel appearing telephonically must participate from a landline.

Dated: August 21, 2018.

_____

Neil V. Wake
Senior United States District Judge